less behavior and emotional problems, higher self-esteem, better family relations, and better school performance than children who are subjected to sole custody arrangements.

119. The Defendant is aware, or should be aware, through numerous official governmental reports, studies, and other relevant published data, that a pattern of awarding sole custody dramatically increases the incidence of crime, poverty, drugs, suicide, dropouts, teenage pregnancies, and etc. -- all of which cost taxpayers significant, and even unbearable, financial burdens, yet continues to support, and even encourage, these routine awards of sole custody, even after announcing and recognizing its own consistent catastrophic budgetary failures.

120. The Defendant is aware, or should be aware, through numerous official governmental reports, studies, and other relevant published data, that the very existence of custodial "move-aways" dramatically increases the incidence of parental kidnappings, which dwarf all other types of kidnappings, yet continues to allow move-aways to happen, in spite of increased tax burdens that result from the ensuing processes in tracking down and administering the consequences. An in-depth analysis, conducted in 1990 by the U.S. Department of Justice, confirmed that over 350,000 children were abducted that year by a family member -- typically a parent involved in a custody dispute -- while the number of stereotypical kidnappings of children for ransom amounted only to a few hundred nationwide.

121. The Defendant is aware, or should be aware, through numerous official governmental reports, studies, and other relevant published data, that refusals to ensure that both fit natural parents are treated fairly and constitutionally within the realm of family courts is directly or indirectly responsible for countless murders, suicides, and murder-suicides. Every week, approximately 300 fathers and 75 mothers commit suicide in this country, with the majority of these senseless deaths directly attributable to victimization by family courts. These suicides are

often committed by passive parents, due to hopelessness in a system fraught with injustice, but the more aggressive parents occasionally snap at the weight of suffering such anguish, and violently take out their desperation on estranged partners, sometimes even murdering them, and possibly the children, before also killing themselves.

122. The Defendant is aware, or should be aware, through numerous official governmental reports, studies, and other relevant published data, that refusals to ensure that both parents are treated fairly in family courts is directly or indirectly responsible for large and unnecessary additional direct tax burdens upon every citizen, through increased welfare spending and self-serving enlargement of state "family" agencies and entities. The Defendant itself appropriates and spends an overwhelming quarter, or more, of its annual budget on various welfare programs.

123. The Defendant is aware, or should be aware, through numerous official governmental reports, studies, and other relevant published data, that refusals to ensure that both parents are treated financially fairly in family courts is directly or indirectly responsible for vast numbers of personal and corporate bankruptcies, which are absorbed into later tax burden increases.

124. The Defendant is aware, or should be aware, through numerous official governmental reports, studies, and other relevant published data, that there is a progressive reporting of publicly demonstrated general pattern of fraud and abuse in state so-called "family agencies", which are very costly, and violate rights on an unprecedented scale.

125. The Defendant is aware, or should be aware, through numerous official governmental reports, studies, and other relevant published data, that patterns of routine awards of sole custody inherently create and encourage divorce rates and other family breakdown on a massive scale, adding to the reckless or negligent festering of a society plagued by ever-increasing percentages

of the population infected by sexually transmitted diseases, most notably AIDS, which cost even further increased taxes to address these important social problems and dangers.

126. The Defendant is aware, or should be aware, through numerous official governmental reports, studies, and other relevant published data, that patterns of routine awards of sole custody inherently create and encourage divorce rates and other family breakdown on a massive scale, adding to the reckless or negligent ignoring of the root causes of the vast majority of child abuse and neglect in this nation. The National Clearinghouse for Child Abuse and Neglect Information, a service of the U.S. Department of Health and Human Services, consistently reports that, year after year, single parents are responsible for almost two-thirds of all substantiated cases of abuse and neglect committed against children – more than all other classes of perpetrators combined. The national costs of these child abuse and neglect incidents surpassed $94 billion in 2001, according to Prevent Child Abuse America. Whereas the majority of child abuse can be easily prevented, by simply ensuring the regular presence of both parents in the daily lives of children,. Involving the eyes and ears of both parents creates a naturally self-balancing situation, wherein a child's health and safety is automatically monitored by opposing sides who stand to gain if the other side fails, but the Defendant has caused, in most cases, the child in question to no longer be able to be monitored by both such fit natural parents, and therefore the Defendant is either directly or proximately responsible for the acts of abuse and neglect that the children suffer.

127. The various allegations above well constitute a standard pattern, practice, and even an unwritten policy, of deliberate indifference committed and/or allowed by the Defendant, as a whole, in regards to violations of the various constitutional rights of each and every member of the Class to custody, care, control, and management of his or her children, and even against all of society, and against all corresponding United States citizens and taxpayers as a group and a class.

128. The above-described facts constitute violations of at least: the unreasonable seizures prohibited by the Fourth Amendment to the United States Constitution; the prohibited deprivations of life, liberty, and/or property, without due process of law, that are all protected by the Fifth and Fourteenth Amendments to the United States Constitution; the absolute impartiality of judicial proceedings demanded by the Sixth Amendment to the United States Constitution; the guarantees against cruel and unusual punishments that are all secured by the Eighth Amendment to the United States Constitution; the protections of the privileges and immunities of all citizens maintained by the Fourteenth Amendment to the United States Constitution; the full and equal protections of the law promised to all citizens by the Fourteenth Amendment to the United States Constitution; the right to be heard, as a party in a court of law, secured by the Sixth Amendment to the United States Constitution; and, the prohibitions against various forms of discrimination that are found in the Fourteenth Amendment to the United States Constitution.

129. The Plaintiffs, by and through the principal Plaintiff, and together as a Class, are entitled to various awards of damages against the Defendant for the grievous violations and deprivations of the civil and constitutional rights described herein, and are also entitled to various and appropriate remedial actions performed in immediate correction of the manifest injustices detailed herein, all as demanded and requested by and through the Plaintiffs' prayers for relief under section "H" of this pleading.

## H.  Prayers for Relief

130. That given due consideration to all of the above, the Plaintiffs now and hereby pray this Court for the following enumerated forms and natures of relief.

131. Plaintiffs pray this Court that all issues in this cause be tried to a jury to the extent they are so triable under the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure.

132. Plaintiffs pray this Court for immediate restoration/elevation to equal custodial status for all "fit" (no proven abuse/neglect of kids) noncustodials who have already have any present, ongoing relationships (within the prior 30 days) with their minor children

133. Plaintiffs pray this Court for a progressive, probationary period opportunity for any and all "fit" noncustodials, who have been denied all visitation by custodials for 30 days or more, to achieve the same above status, upon successful completion of phased-back-in visitation schedule (suggested 4 to 8 week term of "probationary period"; documented exercise of all "visitation" equals satisfactory completion; any interference of such "probationary" visitation by custodial parent is a strict violation, and can be used against that "unfit" custodial parent for switch of a permanent award of remaining sole custody).

134. Plaintiffs pray this Court for prohibition against custodial move-aways of minor children from their original physical residences with the natural parents, or, that such a parent must provide voluntary relinquishment of his or her share of equal child custody, in the event they elect to move more than sixty (60) miles away from the children's original physical residences with the natural parents.

135. Plaintiffs pray this Court for abolishment of forced / court-ordered child support in most cases, due to equal custodial status. All future expenses of children are to borne by each parent during their own parenting time. Only a very few expenses, like schoolbooks, medical insurance, and etc., to be allowed still officially split 50/50 by parents under the guise of state assurance (courts).

136. Plaintiffs pray this Court for revamping of all remaining child support orders, in those few cases where there will still be one custodial and one noncustodial (due to: abuse/neglect by one parent, lengthy imprisonment of one parent, long-term long-distance military service by one parent, and etc.), to be due-process based upon various true, reasonable, and realistic circumstances involving total finances in both parental households.

137. Plaintiffs pray this Court for direction of reimbursements from custodial parents back to noncustodial parents, in all situations wherein the amounts of child support orders were in excess of the maximum limits of federal law.

138. Plaintiffs pray this Court for actual (not just historical) abolishment of all child support "debtors prison", whether done via criminal charges or contempt.

139. Plaintiffs pray this Court for abolishment of all child support "forfeitures" - the takings of drivers and professional licenses for "nonpayment" of child support.

140. Plaintiffs pray this Court to direct that the Defendant establish sufficient numbers of public (staffed) neutral visitation exchange centers, enough to support temporary or permanent usage by any parent, custodial or noncustodial, upon reasonable belief of need due to threatened or actual visitation interference by the other parent, intended mainly for monitoring purposes

141. Plaintiffs pray this Court for prohibition against the changing of children's existing names and/or surnames without mutual and voluntary agreement by both parents.

142. Plaintiffs pray this Court for a just, sufficient, and reasonable award of various damages, against the Defendant, and the same upon its estate and all holdings, present and future, and the same declared jointly and severally liable as amongst all co-conspirators, in the aggregate value of $1,000,000.00 payable per Plaintiff, including all judgment interest obtainable pursuant to 28 USC § 1961(a), and accruing thereon, executable upon all monies, property, chattels, assets,

goods, pecuniary interests, and anything whatsoever of any value, tangible or intangible, that may be owned or controlled, wholly or partially, by said Defendant, along with execution and/or garnishment against all of said Defendant's forms of income, interests, or any other earnings, present and future, all and the same until such time as said judgment(s) is/are satisfied as to the Plaintiffs' favor, paid in full, or otherwise settled by lawful agreement.

143. Plaintiffs pray this Court grant an award recompensing their costs of litigation, including all reasonable expenses and fees therein.

144. Plaintiffs pray this Court for an appropriate portion of the above-sought damages to be in the form of directing the Defendant to provide the Plaintiffs with various compensatory tax treatment(s) as previous "noncustodial" parents, for a fixed term of years, in reconciliation and balance for previous and existing disparately applied custodial tax benefits and tax preferences.

145. Plaintiffs pray this Court for an appropriate portion of the above-sought damages, to be in the form of execution against unused, abandoned, or unnecessary state property and assets, with disbursement of these damages by liquidation or direct transfer of title.

146. Plaintiffs pray this Court to direct that the Defendant pay back, to the federal government, all appropriate portions of federal funding obtained due to fraudulent acquisitions thereof.

147. Plaintiffs pray this Court to direct declarations of express rights of the Plaintiffs to individually sue state actors for damages, and all other appropriate relief, in proven willful abuses of process.

148. Plaintiffs, and on behalf of all citizens of the United States, and on behalf of all other persons or entities that may also either be, or become, parties to domestic relations cases, or related types of cases, within the Defendant's courts, pray this Court to cause and enforce the immediate prohibition of all above described violative practices that may be happening within

the various courts of the Defendant, by issuing an appropriate declaratory order permanently enjoining the same, and the same being crucial and imperative to ensure that the civil rights of an undetermined number of United States citizens, are no longer either deprived nor neglected by the same courts.

149. Plaintiffs pray this Court to enjoin as Defendants, pursuant to the protections of Plaintiffs' rights provided for under 42 USC § 1986, any persons or entities that engage in this matter and attempt - in any way - to pervert, hinder, obstruct, or delay justice in this cause, or of the true and due course thereof, and to hold such Defendants jointly and severally liable to all awards of damages in favor of the Plaintiffs, including any additional judgments or penalties determined because of said attempts by such persons or entities, all pursuant to law.

150. Plaintiffs also pray this Court grant and compel all such other and further relief deemed just and proper in the premises.

**WHEREFORE**, the undersigned Principal Plaintiff, Joseph F. Schebel, Jr., individually, and on behalf of all putative plaintiffs so similarly situated (together, "the Class"), now and together pray this Court for the above described forms of relief, and/or such substantially similar relief; and, for all other relief that is just and proper in the premises.

Respectfully submitted,

_____
Joseph F. Schebel, Jr.

### I. Verification

I hereby declare, verify, certify and state, pursuant to the penalties of perjury under the laws of the United States, and specifically by the provisions of 28 USC § 1746, that I am the principal Plaintiff in the above encaptioned action, that I am also a natural parent of at least one living

minor child, and that both of us are natural-born citizens of the United States, that I am a resident of the Commonwealth of Massachusetts, that I allege a federal dispute and controversy with the Commonwealth of Massachusetts, over the rightful amount of time, care, custody, and management of and with such child, that I have read and understood the above complaints and petitions, and that the above and foregoing information contained within the same are true and correct to the best of my knowledge, information, and belief - so help me, Almighty God.

Executed at  Feeding Hills , Mass  this 4 day of October, 2004.

*Joseph F. Schebel, Jr.*

### CERTIFICATE OF SERVICE

I hereby certify that, on this 4 day of October, 2004, a true and complete copy of the foregoing verified complaints and petitions, by depositing the same in the United States mail, postage prepaid, has been duly served upon:

(Governor for the Commonwealth of Massachusetts):
Mitt Romney
Office of the Governor
State House
Room 360
Boston, MA 02133

(Attorney General for the Commonwealth of Massachusetts):
Tom Reilly
Office of the Attorney General
1 Ashburton Place
Boston, MA 02108-1698

*Joseph F. Schebel, Jr.*

Joseph F. Schebel, Jr.
71 Columbia Drive
Feeding Hills, MA 01030
413-789-7515

43